UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CLIFTON JAMES HAIRSTON,

      Plaintiff,

v.                             Case No. 5:20-CV-119-RV-HTC

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") partially denying Clifton James Hairston's (hereinafter, "Claimant" or "Plaintiff") application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34.[1] Claimant's complaint was referred to the undersigned for a report and recommendation to the District Judge. Upon review of the record, the undersigned finds that the

---

[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Thus, regardless of a whether a referenced statute herein addresses DIB or SSI, only, the legal principle at issue applies equally to both claims.

Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is supported by substantial evidence and, thus, recommends the decision be AFFIRMED.

## I.    FACTUAL AND PROCEDURAL HISTORY

Claimant was born in August 1982.  T. 324. [2]  At the time he applied for DIB in 2017, he was 34 years old.  *Id.*  Claimant worked as an electrician, an occupation he had for fifteen (15) years.  T. 50.  However, he has not worked since 2016.  T. 50. Claimant alleged disability from a host of ailments including rheumatoid arthritis, degenerative disk disease, post-traumatic stress disorder ("PTSD"), anxiety, major depressive order, anemia, sleep apnea, sciatica, and carpel tunnel.  T. 118-19, 361.

On March 21, 2017, Claimant protectively filed an application for DIB, claiming disability with an onset date of July 13, 2016.  T. 324-25.  The Commissioner denied the application initially and on reconsideration.  T. 118, 136. The ALJ conducted a hearing on August 15, 2018.  T. 80-117.  On September 27, 2018, the ALJ issued a decision, finding Claimant not disabled under the Act.  T. 158-80.  On January 31, 2019, the Appeals Council vacated the hearing decision and remanded the case to the ALJ.  T. 181-84.

---

[2] The administrative record filed by the Commissioner consists of two (2) volumes (ECF Docs. 13-1 through 13-2) and has 1037 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

On October 30, 2019, Claimant underwent back surgery.  T. 49, 62.  On November 16, 2019, the Department of Veterans Affairs ("V.A.") issued a decision, increasing Claimant's disability rating from 0 to 70%, effective May 22, 2019, based on the V.A.'s evaluation of major depressive disorder and unspecified anxiety disorder.  T. 981-83.

On remand, the ALJ conducted a second hearing on November 20, 2019.  T. 45-117 (hearing transcript).  Because Claimant was still recovering from his surgery, Claimant appeared at the hearing in a prescribed brace.  T. 48-9.  Also, because of the recent surgery, the ALJ and counsel focused their questions on Claimant condition in the years prior to the surgery rather than how he was feeling at the time of the hearing.  *See, e.g.,* T. 71 (counsel asked Claimant about how he was "feeling like a year ago").  The following relevant information is taken from Claimant's testimony at the hearing:

Claimant has back pain, for which he takes medications.  T. 59.  Claimant says he can function on the medication but cannot stay up for long.  He can stand for "probably 20, 30 minutes at most" before having to sit.  T. 51.  Claimant cannot say how long he can walk, but it is not "very far."  T. 52.  He can lift a max of 20 pounds.  T. 53.  He also "cannot sit too long."  T. 56.  Before his back surgery, however, Claimant could walk the distance of a football field.  T. 67.

Claimant is separated from his wife and lives with three children, aged 13, 11 and 8, and with his parents. T. 49-50. Claimant is independent in his activities of daily living including being able to bath himself, dress himself, cook simple meals, do simple chores, such as putting clothes in the laundry, shop, and drive. T. 50, 52, 55. Claimant cannot drive when he is on his medication. T. 69.

Claimant cannot sweep. T. 55. He can start cooking, but then does not finish it because he has to go "lay back down." T. 53. Claimant also helps his three school-age children get ready in the morning and picks them up from school. T. 54. However, other than taking his children back and forth to and from school, a typical day for Claimant is spent lying down. T. 54. Claimant spends "most of [his] days" with "heat and ice on [his] back." T. 53. When Claimant goes shopping, he uses a walker or holds on to a shopping cart. T. 66.

Claimant also suffers from depression and has been taking medication for depression for 8 to 10 years. T. 56. Despite the depression, he is able to do some things with his children, such as attend some of their activities, such as teacher-parent conferences, it just "depends on how [he's] feeling that day." T. 58, 60. Claimant denied a substance abuse problem and indicated that although he was discharged from treatment because of a positive drug test, it was, in his opinion, a false positive. T. 59. Claimant also suffers from "very bad societal anxiety." T. 60. He has panic attacks, which last for about 20 minutes at a time, but it takes him about

45 minutes to an hour to recover from such an attack.  T. 64-5.  He also does not sleep well and wakes up "about four to five times a night."  T. 61.

Additionally, Claimant suffers from arthritis.  T. 61-62.  He was on oxycodone for it as well as medical marijuana, but recently stopped both medications.  T. 62. Claimant also has neck pain, although he is not sure if he wants to have surgery for it.  T. 63.  He gets "constant headaches," and "shooting pains down to [his] two fingers on both arms."  T. 63.  Claimant rates his average daily pain as a 7 or 8, with medication, on a 1-10 scale.  T. 64.

After the hearing, on December 5, 2019, the ALJ issued a decision finding Plaintiff did not become disabled prior to October 30, 2019.  T. 13-43.  On February 20, 2020, the Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 2-4. The Commissioner's determination is now before the Court for review.

## II.   FINDINGS OF THE ALJ

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

- The Claimant meets the insured status requirements of the Act through September 30, 2022.

- The Claimant has not engaged in substantial gainful activity since the alleged onset date.

- Since the alleged onset date of July 13, 2016, the Claimant suffers from the following severe impairments:  degenerative disc disease of the lumbar and cervical spine, major depressive disorder, generalized anxiety disorder, and arthritis.  The Claimant also suffers from the following non-sever impairments:  mild obstructive sleep apneal and PTSD.

- Since the alleged onset date, Claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Prior to October 30, 2019, Claimant had the Residual functional capacity ("RFC") to perform light work, except he could stand and walk for 4 hours in an 8-hour workday.  He could occasionally climb ramps and stairs.  He could never climb ladders, ropes, and scaffolds.  He could occasionally balance, stoop, kneel, crouch, and crawl.  He needed to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, and vibration.  He needed to avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation.  He had to avoid even moderate exposure to hazards, such as machinery and heights.  He was able to understand, remember, and perform simple, unskilled work tasks that do not exceed a reasoning level of two, as

defined in the Dictionary and Occupational Titles.  He could persist and maintain attention and concentration for two-hour increments sufficient to complete an eight-hour day.  He could tolerate occasional interaction with the public.  He could not perform assembly work of any kind.

- Prior to October 30, 2019, considering the Claimant's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

T. 18-36.

## III.   STANDARD OF REVIEW

To succeed on a claim for DIB, a claimant must prove that he is disabled.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a RFC assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.  *Winschel*

v. *Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2001). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

## IV.    DISCUSSION

For the reasons discussed below, the undersigned finds that Claimant's issues on appeal do not warrant a reversal or remand of this case.

A.     **Issue One:  ALJ Erred in Failing to Assign Any Weight to Dr. LaBarbera's Opinion and Little Weight to the V.A. Disability Determination**

In issue one, Claimant raises two (2) arguments regarding the weight the ALJ assigned to certain medical opinions.  First, he argues the ALJ erred in failing to assign any weight to the opinion of psychologist Damon LaBarbera.  Second, he argues the ALJ erred in her consideration of the VA's August 2019 disability decision.

1.     Failure to Assign Weight to Psychologist Damon LaBarbera's Opinions

On pages 9-14 of the ALJ's opinion, she provides a detailed summary of Claimant's medical history from 2015 to 2019.  T. 9-31.  As part of that summary, the ALJ discusses two visits Claimant had with Dr. LaBarbera beginning October 15, 2019, for the purpose of performing a Post-Traumatic Syndrome Disorder ("PTSD") assessment.  In that discussion, the ALJ notes the objective results from Dr. LaBarbera's assessment showed Claimant had "an inclination to amplify report of symptoms."  T. 30.  The ALJ also notes that Dr. LaBarbera concluded Claimant "seeks support from others and downplays whatever assets or competencies he has." *Id.*  The ALJ wrote that Dr. LaBarbera stated, "[Claimant] can be discouraged from lapsing into an invalid lifestyle with encouragement to be as active and productive as possible.  He has not had regular psychotherapy.  It would take considerable therapeutic effort via several modalities for him to return to work." *Id.*

Claimant focuses on just the last sentence of Dr. LaBarbera's statement - "It would take considerable therapeutic effort via several modalities for him to return to work" - and contends the ALJ erred in not assigning weight to that "opinion." ECF Doc. 15 at 18. Claimant contends Dr. LaBarbera's opinion is essentially that "Plaintiff is not able to return to work." ECF Doc. 15 at 18.

The Commissioner makes two arguments in response. First, the Commissioner argues Dr. LaBarbera's statement was not a medical opinion and, instead, was "a simple statement that Plaintiff required treatment prior to returning to work." ECF Doc. 17 at 11. Second, reading the ALJ's discussion in context, it is clear the ALJ assigned no weight to Dr. LaBarbera's opinions and the ALJ's failure to so specifically state is harmless. Based on a review of the record, the undersigned agrees.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Treatment notes can constitute medical opinions if they contain the content set out in 20 C.F.R. § 416.927(a)(1). *Winschel*, 631 F.3d at 1179.

Dr. LaBarbera's opinion that Claimant might be able to return to work with considerable therapeutic effort does not meet that definition. The opinion does not identify the severity of Claimant's impairment and it does not state what Claimant can do despite the impairments. Dr. LaBarbera's opinion does not state when Claimant can return to work or what type of therapies he needs. Because the opinion does not provide any insight into the functional limitations created by Claimant's condition, it is not a "medical opinion." *See Williams v. Comm'r of Soc. Sec. Admin.*, 2015 WL 5708772, at *4 (N.D. Ala. Sept. 18, 2015). In other words, Dr. LaBarbera's "failure to include Claimant's remaining functioning level" means that the opinion "does not constitute medical evidence" and "need not be weighted." *Pena v. Berryhill*, 2017 WL 2984163, at * 8 (S.D. Fla. May 8, 2017).

Also, although Dr. LaBarbera opines that Claimant cannot return to work, whether Claimant is disabled is a legal conclusion reserved for the ALJ, and the doctor's opinion on that legal issue is not entitled to any deference. *See Kramerman v. Colvin,* 2015 WL 965763, at *8 (S.D. Fla. March 4, 2015); *see id.* ("As the ALJ properly noted, Dr. Hudgins' opinion that Williams is permanently disabled is an opinion on an issue reserved to the Commissioner, and therefore not entitled to any special significance"). "Doctors' opinions are not medical opinions with controlling weight when they are determinations reserved to the Commissioner, particularly on whether a person is disabled or unable to work." *Smith v. Soc. Sec. Admin, Comm'r.*,

2014 WL 4264841, at * 6 (N.D. Ala. Aug. 27, 2014); *see also, Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 742, n. 5 (doctor's letters, stating in conclusory fashion, that plaintiff was totally disabled and unable to work, "were not medical opinions entitled to any special significance"), citing 20 C.F.R. §§ 404.1527(e), 416.927(e) (explaining that an opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is disabled or unable to work, is not considered a medical opinion and is not given any specific significance, even if offered by a treating source, but will be taken into consideration").

The undersigned also agrees with the Commissioner that even if the ALJ erred in not assigning specific weight to Dr. LaBarbera's opinion, such error is harmless. There is no principle of administrative law or common sense that requires remand in quest of a perfect opinion and remand is not essential if it will amount to nothing more than an empty exercise. *Smith,* 2014 WL 4264841, at *7 (quoting *Stanton v. Astrue*, 617 F.Supp.2d 1205, 1222 (M.D. Fla. 2008) ((citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) and *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000))).

Here, remanding the case for the ALJ to state the weight she accorded to Dr. LaBarbera's opinion would be an empty exercise. *See Smith*, 2014 WL 4264841 at *7. This is so because the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of

listing 12.04, a determination to which Plaintiff has not raised as a ground of error, and which is supported by the state agency consultants, Dr. Harris and Dr. Annis. Dr. Annis, for example, stated that Claimant's "allegations of mental limitations in basic work activities are partially consistent with totality of evidence," and the "objective evidence indicate[s] moderate overall functional impairment due to mental conditions." T. 146. Plaintiff also does not raise as a ground of error the great weights the ALJ assigned to Dr. Harris and Dr. Annis' opinions.

Also, as the Commissioner points out, Dr. LaBarbera's findings are also inconsistent with those of Claimant's treating physician, Dr. Patel, who noted in April 2018 that "there was no evidence of overt depression" and Claimant had "good insight and his sleep was reported as improved on medication." T. 30. Claimant also testified at the hearing that he takes medication for the depression, which "puts a bandaid [sic] on it for a little while," which is consistent with Dr. Patel's determination. T. 56. Accordingly, the undersigned finds no error in the ALJ's reference to or treatment of Dr. LaBarbera's opinion.

### 2. Failure to Assign Greater Weight to V.A.'s August 16, 2019 Decision

In the ALJ's decision, the ALJ gave "little weight" to the V.A.'s disability rating decision, which assigned a disability rating from 0% to 70% to Claimant based on major depressive disorder and unspecified anxiety disorder. T. 31-2. Claimant

takes issue with the ALJ's failure to assign great weight to the V.A.'s decision. The undersigned finds no error in the ALJ's determination.

In *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1325 (11th Cir. 2020), the Eleventh Circuit recently addressed how an ALJ should consider another agency's disability determination. Reconciling the Fifth Circuit's decision in *Skeels v. Richardson*, 453 F.2d 882, 883 (5th Cir. 1972) with a subsequent Eleventh Circuit decision in *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984), the *Noble* panel "clarified that courts should affirm an SSA ALJ's decision that departed from another agency's disability determination if: (1) the decision shows the ALJ considered the other agency's disability determination; and (2) substantial evidence in the record supported the ALJ's decision to depart from that determination." *Mills v. Berryhill,* 824 F. App'x 894 (11th Cir. 2020) (discussing *Noble*, 963 F.3d at 1330); *see also,* 20 C.F.R. 404.1513a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). Both of those factors are met here.

First, the face of the ALJ decision shows the ALJ considered the V.A.'s decision. T. 31. The ALJ stated, specifically, that she was assigning little weight to

the V.A. disability determination because "it did not discuss the Claimant's symptoms in any further detail and failed to address their frequency or how they manifested." T. 32. The ALJ noted the V.A. determination also "failed to discuss evidence of psychological signs or methods, frequency, and efficacy of treatment." T. 32. Additionally, the ALJ noted the V.A. does not apply the same rules and regulations as the SSA in determining disability rating. T. 32.

Second, substantial evidence supported the ALJ's decision to depart from the V.A. disability rating. As the ALJ correctly noted, while the V.A. decision is based on "private treatment records . . . which discuss the symptoms of [Claimant's] medical condition, those records are not provided." T. 982. Indeed, other than generalized statements regarding the effects of the disorders, the V.A. does not provide any basis for its decision. T. 982. It certainly does not address any treatment and it does not address how often any of the symptoms identified occur.

Also, the V.A.'s decision is inconsistent with other evidence in the record. As the ALJ noted in her decision, a third party reported Claimant gets along with friends and families. T. 22' T. 384. The third party reported Claimant is "ok as long as he is on medication." T. 384. Additionally, Claimant reported at the hearing he is able to attend his kids' events, including parent-teacher conferences. T. 58, 60. He is also able to do his own shopping. T. 52. Also, state agency consultant, Dr. Arkin, on reconsideration concluded that, while Claimant "may be best suited for gainful

employment in environments with limited interaction with the general public, . . . he retains the ability to adapt to moderate interpersonal demands as needed during the course of a workweek."  T. 153.

Claimant relies on *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902 (11th Cir. 2016), in support of his position.  That case, however, is inapposite because in *Brown-Gaudet-Evans,* the ALJ summarily rejected the V.A.'s determination based solely on the different standard used by the VA.  *Id.* at 904 (The ALJ stated "the undersigned has considered this [VA] opinion, noting that such program has different criteria for deciding whether an individual is 'disabled' or 'unemployable', and, therefore gives this opinion little weight.").  That is not what the ALJ did here.  Instead, the ALJ provided specific reasons for assigning little weight to the V.A.'s determination.  Thus, by "consider[ing] and closely scrutiniz[ing] that determination the ALJ did not misapply the law in discounting it."  *Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 914-915 (11th Cir. 2015); *Brown-Gaudet-Evans,* 673 F. App'x at 904 (remanding the case for the ALJ to "seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination").

Thus, the undersigned finds that given the issues identified by the ALJ, the ALJ did not err in assigning less than great weight to the V.A.'s determination of disability.  *See Boyette v. Commissioner*, 605 F. App'x 777, 779-80 (11th Cir. 2015)

(affirming ALJ's finding of no disability based on ALJ's explanation of weight assigned to V.A. determination of disability and basis for same); *Pearson v. Astrue*, 271 F. App'x 979, 980 (11th Cir. 2008) (finding records support ALJ's conclusion that claimant did not qualify for disability under SSA even though he was given a total disability rating by the V.A.). The V.A.'s listing of nine symptoms and their manifestations does not address the ALJ's concerns regarding the detail of the symptoms, the frequency of the symptoms, the frequency of treatment, and efficacy of treatment.

**B.     Issue Two:  The ALJ Erred in Determining Claimant Had a RFC to Perform Light Work, Even Though He Could Not Stand or Walk for More Than Four Hours in an Eight-Hour Day**

In issue two, Claimant argues the ALJ erred in finding him capable of doing light work even though Claimant can only stand or walk for four hours in an eight-hour day. Claimant's argument, however, is not supported by the Social Security Regulations or the law in this circuit. As noted in *Freeman v. Comm'r Soc. Sec.*, 593 F. App'x 911, 915 (11th Cir. 2014), "the regulations … expressly provide that light work may require either 'a good deal of walking or standing or … sitting most of the time with some pushing or pulling of arm or leg controls.'"  *Id.* at 915 (11th Cir. 2014) (quoting 20 C.F.R. §  404.1567(c)); SSR 83-10 (identifying "light work" as "involv[ing] sitting most of the time but with some pushing and pulling of arm-hand or leg foot controls, which require greater exertion then in sedentary work").

Claimant's very argument was rejected by the Northern District of Alabama in *Kirtland v. Colvin*, 2015 WL 241749 at *4 (N.D. Ala. Jan. 20, 2015). In *Kirtland*, like in this case, the claimant argued the ALJ's determination that he "could perform light work is 'contradictory' to [the ALJ's] finding that he is limited to occasionally—that is, for up to four hours in an eight-hour day—walking and standing," because "'light work,' as defined by the Social Security Administration, requires the ability to spend up to six hours or two-thirds of the day on one's feet, walking, and standing up." *Id.* In rejecting the claimant's argument, the district court stated it was "puzzled" by the argument because "it seems to misunderstand the basic framework of an RFC assessment: a classification of the claimant's maximum exertional abilities as sedentary, light, medium, or full, and then a specification of any additional limitations. *Id., citing,* SSR 83–10, 20 C.F.R. § 404.1545.

The fact that the ALJ determined Claimant could do light work, does not mean that Claimant has to be able to perform the full range of activities that fall under light work.[3] As the court stated in *Kirtland,* an RFC to perform light work can be limited to a Claimant being only able to walk and stand up to four hours a day in an 8-hour day. Thus, it "is in no way contradictory for the ALJ to find that Kirtland could

---

[3] Under SSR 83-10, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour day." SSR 83-10.

perform light work with certain limitations, including the ability to walk and stand for only four hours a day." *Id.* Like the ALJ in *Kirtland*, the ALJ here did not find Claimant could perform "the *full range* of light work." *Id; see Orestano v. Comm'r of Soc. Sec.*, 252 F. App'x 962, 963 (11th Cir. 2007) (finding claimant "capable of performing a significant, but not a full, range of sedentary work"); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) ("This Court has interpreted "full range of employment" as being able to do "unlimited" types of work at the given exertional level.").

Instead, where a claimant can perform some, but not all, activities required, the ALJ should look to the testimony of a vocational expert to "to help determine whether or not there [were] a significant number of jobs in the national economy that the claimant could perform given her residual functional capacity and other vocational factors." *Orestano*, 252 F. App'x at 963; *Freeman*, 593 F. App'x at 916 ("Because the ALJ concluded that Mr. Freeman could not perform the full range of medium work, she properly sought testimony from a VE regarding the types and number of jobs that existed in the national economy that Mr. Freeman could perform given his limitations."). In situations where a claimant's exertional limitations do not coincide with a particular exertional level, as is the case here, SSR 83-12 provides that an adjudicator "will need to consult" a vocational resource to determine

the extent of any erosion in the occupational base.  SSR 83-12.  That is exactly what the ALJ did here.

At the November 2019 hearing, the ALJ asked the vocational expert, Katherine Jett, whether there were jobs in the national economy for a hypothetical person who matched Claimant's impairments.  T. 74.  The ALJ included in that hypothetical the reduced limitation that Claimant could "stand or walk for four hours in an eight-hour workday."  T. 74.  Based on the hypothetical provided, the VE stated there were jobs in the national economy meeting Claimant's criteria, and then -- "to accommodate for the reduced standing" -- the VE reduced the total number of jobs available by "one-third, resulting in approximately 15,500 positions in the national economy."  T. 75-6.

Claimant argues this reduction in the number of jobs to account for his limitation is "arbitrary," but Plaintiff does not cite any case law to support his assertion that a vocational expert cannot make such adjustments.  ECF 15 at 24.  To the contrary, the Eleventh Circuit has specifically found a vocational expert is "especially suited to the sort of individualized assessment needed in complex cases" – such as where a claimant has a "mix of limitations."  *Watson v. Astrue*, 376 F. App'x 953, 958-59 (11th Cir. 2010) (finding ALJ "did not commit reversible error by choosing to rely only on the VE's testimony to determine, under step five, whether given Watson's age, education and work experience, Watson could 'make an

adjustment' to a range of light work reduced by his specific exertional and nonexertional limitations"). A "vocational expert's testimony constitute[s] substantial evidence that there are a significant number of jobs in the national economy" where an ALJ "pose[d] ... hypothetical question[s] which comprise[d] all of the claimant's [credible] impairments." *Freeman*, 593 F. App'x at 916 (internal quotation marks omitted) (*citing Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1270 (11th Cir.2007)). Claimant does not take issue with the hypothetical used.

Finally, the undersigned finds Claimant's reliance on *Griffin v. Astrue*, 2008 WL 2782719 (MD. Ala. July 8, 2008) to be misplaced for two critical reasons. First, unlike this case and unlike *Kirtland*, the ALJ in *Griffin* concluded Griffin "could perform the full range of light work." *Id.* at \*3. Second, because the ALJ determined Griffin could perform past relevant work, the ALJ did not rely on a vocational expert to determine what work was available to Griffin based on her reduced limitations. *Id.*

### C.   Issue Three:  ALJ Erred in Determining There Were a Significant Number of Jobs in the National Economy Claimant Could Perform When He Would Have Been Required to Miss Work for Medical Appointments

In issue three, Claimant argues there was no work he could have performed in significant numbers in the national economy prior to October 30, 2019 because the vocational expert testified missing two days of work per month would be work preclusive *and* the record shows Claimant had missed 44 medical appointments in

24 months prior to the onset date.  Also, Claimant alleges he missed at least two days of work per month for medical appointments and that 20 days out of 30 days a month are "so bad" he could not even make his medical appointments or other planned activities.  The undersigned finds no error.

In *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902 (11th Cir. 2017), the Eleventh Circuit was "unpersuaded by Cherkaoui's argument that the excessive number of medical appointments she attended rendered her disabled."  *Id.* at 904. Specifically, the court determined "whether the number of medical appointments affects [the claimant's] ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments."  *Id.*  Additionally, the court noted "nothing in the record indicates that Cherkaoui was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work." *Id.*

Similarly, there is nothing in the record in this case to support Claimant's allegation that he was required to miss at least two days of work a month for medical appointments or that those appointments could be scheduled only during working hours.  *See Palencia v. Saul,* 2020 WL 5742981, at *8 (M.D. Fla. Sept. 25, 2020) ("Additionally, as the Commissioner contends, and as the record supports, Plaintiff

was not required, nor would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work."). Claimant's presumption, however, is purely speculative as it is based solely on her "general medical history". *See Rivero v. Comm'r of Soc. Sec.*, 2018 WL 1466387, at *6 (M.D. Fla. Mar. 26, 2018) (agreeing with Commissioner that claimant's "alleged need to be absent from work at least two and one half days per month is speculation" because "[h]er argument was based on the analysis of her general medical history").

Also, although Claimant testified he has to cancel planned activities 20 out of 30 days a month because of depression, as stated above, Dr. Annis noted that Claimant's "allegations of mental limitations in basic work activities are partially consistent with totality of evidence in record." T. 145. Moreover, although a "finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that [s]he can physically perform certain jobs . . . also requires a determination that the claimant can *hold* whatever job [s]he finds for a significant period of time," *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986), it is well "settled now that reviewing courts generally assume that administrative [RFC] assessments include *implicit* findings of ability to work on a regular and continuing basis." *J.P. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 1894146, at *3 (M.D. Ga. Mar. 19, 2021)

(finding ALJ implicitly came to same conclusion as the Eleventh Circuit in *Cherkaoui*).

### D.   Issue Four:  ALJ Erred in Determining Claimant Could Perform Jobs with an SPV Level of 2

In issue four, Claimant argues he is limited to performing work equating specific vocational preparation ("SVP") level 1 because that was what he was told in the SSA's written denial of his disability application.  Specifically, Claimant points to the SSA's July 21, 2017, and September 20, 2017, Explanations of Determination, which state that disability was being denied because Claimant was "still capable of performing work that requires less physical effort, and only a very short, on-the-job training."  T. 188, 195.

SVP is defined in the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Horne v. Colvin*, 2013 WL 1707708, at *1 (S.D. Ga. Mar. 18, 2013), *report and recommendation adopted*, 2013 WL 1708031 (S.D. Ga. Apr. 19, 2013), citing http://www.occupationalinfo.org/appendxc_1.html.  SVP ratings address issue of the level of vocational preparation necessary to perform a job while the issue of a job's simplicity is addressed by GED ratings. *Hall–Grover*

*v. Barnhart,* 2004 WL 1529283 (D.Me.2004).   An SPV level of 1 indicates that preparation for the job should be a "short demonstration only."   *See* http://www.occupationalinfo.org/appendxc_1.html.   An SPV level of 2 indicates that preparation for the job should not extend "beyond short demonstration up to and including 1 month."  *Id.*

The undersigned finds no error in the ALJ's determination.   As an initial matter, the undersigned agrees with the Commissioner that the Explanation of Benefits is not entitled to any weight.   In Florida, a single decision maker ('SDM') is assigned to make the initial disability determination after appropriate consultation with a medical or psychological consultant.   *See* 20 C.F.R. § 404.906(b)(2).   But the "SDM" designation connotes no medical credentials.   *See id.* § 404.906(a), (b)(2). The SSA's Program Operations Manual System ("POMS") explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that "SDM-completed forms are not opinion evidence at the appeals level."   POMS § DI 24510.050;[4] *see also Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871–72 (11th Cir. 2012).

Regardless, Claimant does not argue and does not point to anything in the record showing that he would be unable of performing work requiring preparation at SPV level 2.   Instead, there is substantial evidence in the record from medical

---

[4] Available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510050.

sources to support the ALJ's determination that Claimant could perform work that would require preparation at an SVP level 2. State agency consultant, Dr. Annis, for example, on reconsideration, determined that while "complex instructions may need to be repeated, rephrased, or broken into smaller steps, Claimant's ability may improve with repetition." T. 152. Dr. Annis also determined Claimant "is mentally able to understand and follow a schedule, although persistence and pace may sometimes fluctuate." T. 153.

E.    **Issue Five: ALJ Erred in Failing to Include in the Hypothetical to the VE a Limitation Based on Less Than Occasional Frequent Handling and Fingering**

In issue five, Claimant argues the ALJ erred by failing to include manipulative limitations in the RFC and in hypotheticals or questions posed to the VE. In support of this argument, Claimant refers to specific medical evidence in the record and to Claimant's testimony. Claimant contends this evidence shows Claimant was limited in his handling and fingering. The undersigned disagrees.

First, the evidence relied on by Claimant does not show Claimant suffered from such a limitation. Dr. Kenawy's record, T. 494-95, simply states that Claimant reported a history of carpel tunnel syndrome. There's no indication from that 2017 record how Claimant was affected by that syndrome or whether such conditions could be effectively treated. Moreover, Dr. Kenawy's examination of Claimant on that day, while noting "tenderness (bilateral hand, foot)" showed "no contractures,

malalignment, or bony abnormalities and normal movement of all extremities."  T. 494.  Similarly, the September 27, 2019, records from Emerald Coast Rheumatology note a tenderness or tremor in Claimant's hands and a reduced grip strength, but also that there was normal movement of all extremities.  T. 986; 27 (the ALJ also noted in her discussion of these records that Claimant had "normal movement of all extremities").

Claimant also cites Dr. Elzawahry's treatment notes.  However, these records also fall short of supporting Claimant's position.  Dr. Elzawahry's October 2019 notes indicate Claimant suffered from several years of "jaw tremors".  T. 1023.  Although Dr. Elzawahry's notes indicate Claimant reported the tremors also occur in his hands, they are "mainly" in his face or jaw.  T. 1025.  Additionally, no abnormal motor skills were identified during examination.  T. 1027.  Also, while Claimant testified at the hearing, he "can't lift anything hardly," he also testified that, before his October 2019 surgery, he could lift "max 20 pounds."  T. 53.

Second, substantial evidence supports the ALJ's failure to further reduce Claimant's RFC to include limited hand and finger manipulations.  The evidence shows Claimant can play video games, text and make calls on his cell phone, drive, prepare simple meals, and attend to his own personal care, such as bathing and dressing himself.  T. 23, 144, 151.  Also, Dr. Arkin determined Claimant was

"unlimited, other than shown, for lift and/or carry" to "push and/or pull (including operation of hand and/or foot controls)."  T. 148.

Accordingly, it is respectfully RECOMMENDED that:

1.    The Commissioner's decision be affirmed.

2.    The clerk be directed to enter judgment in favor of the Commissioner and close the file.

Done at Pensacola, Florida, this 9th day of July, 2021.

_/s/ Hope Thai Cannon_
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.